UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| A.M.J., by and through her parents and natural guardians, D.J. and G.C.,<br><br>Plaintiff,<br><br>v.<br><br>Royalton Public Schools; Independent School District No. 485; Royalton Board of Education; Wanda Pikus, Chairperson of the Board of Education, in her representative capacity; John Franzoia, Superintendent, in his representative and individual capacities; Ron Super, Title IX Grievance Coordinator, in his representative and individual capacities; Phil Gurbada, Principal, Royalton Elementary School, in his representative and individual capacities; and Lee Obermiller, Principal, Royalton High School, in his representative and individual capacities;<br><br>Defendants. | Civil No. 05-2541 (PAM/RLE)<br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on Defendants' Motion for Partial Summary Judgment. For the reasons set forth below, the Court grants the Motion in part and denies it in part.

**BACKGROUND**

Plaintiff is a fifteen year-old, female student at Royalton High School and brings this action through her parents and natural guardians. Defendants are the Royalton Public Schools, Independent School District (ISD) No. 485, the Royalton Board of Education, and

various school administrators. Plaintiff is suing Defendants for purported violations of her constitutional and civil rights.

Plaintiff contends that students at Royalton public schools subjected her to almost six years of racial, sexual, sexual orientation, and gender harassment; discrimination; violence; and retaliation. In particular, she claims that the students almost daily made derogatory statements and left notes in her locker, calling her names such as "dyke," "prairie nigger," and "fat fucking whore liar." According to Plaintiff, students also laughed at her Native American culture and traditions. She avers that students physically attacked her as well: smashing her face into the ground, tripping her, grabbing her hair, smearing gravel on her face and in her mouth, spitting on her, and shoving her into lockers and walls. The alleged harassment, discrimination, and violence was so severe that Plaintiff's parents removed her from school for several extended periods. Plaintiff's physician recently ordered her not to attend school because of the adverse effects on her mental health.

Some of the behavior and comments occurred in the presence of school staff, who did not take any action.[1] Plaintiff claims she reported the language and behavior to school administrators dozens of times, but Defendants took no corrective or preventative action. To the contrary, Plaintiff maintains that Defendants blamed her, accused her of lying, taunted her parents, and retaliated against her.

Plaintiff sues under 42 U.S.C. § 1983 for violations of the Fourteenth Amendment's

---

[1] One of Plaintiff's teachers allegedly punished Plaintiff when she offered information to correct erroneous curriculum on Native American culture.

Due Process Clause and Equal Protection Clause, Title IX of the Education Amendments of 1972, and Title VI of the Civil Rights Act of 1964. She also brings state law claims under the Minnesota Human Rights Act (MHRA), a negligence claim, and intentional and negligent infliction of emotional distress claims. She is seeking declaratory and injunctive relief, $5 million in compensatory damages, and punitive damages.

**DISCUSSION**

In Defendants' Motion for Partial Summary Judgment, they ask the Court to limit Plaintiff's demand for compensatory damages to $1 million, to dismiss Plaintiff's claim for punitive damages, and to dismiss Plaintiff's claims of negligence and negligent infliction of emotional distress.

**A.     Standard of Review**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). As the United States Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quotation omitted). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to Plaintiff as the non-moving party. See Enter. Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996).

The moving party bears the burden of showing that there is no genuine issue of

material fact and that it is entitled to judgment as a matter of law. Id. A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik v. Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

**B.    Compensatory and Punitive Damages**

Defendants argue that Plaintiff's demand for compensatory damages must be limited to $1 million, which is the Defendant ISD's insurance policy limit. Minnesota law establishes maximum tort liability limits for claims against municipalities[2] and their employees. Minn. Stat. § 466.04. However, if a municipality purchases insurance, it waives the limits to that extent. Id. § 466.06. By the statute's own language, the maximum liability limits apply only to Plaintiff's tort claims, not her federal statutory or constitutional claims. Additionally, § 466.04 does not limit Plaintiff's recovery for compensatory damages against the individual Defendants in their personal capacities. See Wilson v. City of Eagan, 297 N.W.2d 146, 149 (Minn. 1980).

Defendants next contend that Plaintiff cannot seek punitive damages. This assertion is only partially correct. Minnesota law precludes awards of punitive damages against municipalities. Minn. Stat. § 466.04. In addition, Plaintiff may not recover punitive damages under Title VI, Title IX, or § 1983, against governmental entities such as the

---

[2]Defendants Royalton Public Schools, ISD No. 485, and the Royalton Board of Education are municipalities. See Minn. Stat. § 466.01, subd. 1.

municipal Defendants.  See Morlock v. W. Cent. Educ. Dist., 46 F. Supp. 2d 892, 923-24 (D. Minn. 1999) (Tunheim, J.); Schultzen v. Woodbury Cent. Comm. Sch. Dist., 187 F. Supp. 2d 1099, 1128 (N.D. Iowa 2002).  On the other hand, the Minnesota statutory limitations on punitive damages do not apply to the individual Defendants, even in their capacities as municipal employees.  See Wilson, 297 N.W.2d at 150.  In addition, a municipal entity can be assessed punitive damages of up to $8,500 for a MHRA claim.  See Minn. Stat. § 363A.29; Daines v. City of Mankato, 754 F. Supp. 681, 704 (D. Minn. 1990) (Renner, J.).

Defendants therefore are entitled to summary judgment on damages only in that Plaintiff's recovery for tort claims against the municipal Defendants and Defendant employees acting in their official capacities is limited to $1 million in compensatory damages; Plaintiff is limited to $8,500 in punitive damages against the municipal Defendants; and Plaintiff may not recover punitive damages from the municipal Defendants under Title VI, Title IX, or § 1983.  Defendants have identified no other limits on damages.

**C.   Negligence Claims**

Defendants argue that an expert is required to establish the applicable standard of professional care by the school administrators.  Plaintiff has not identified such an expert, and the deadline for disclosing experts has long expired.  Defendants therefore assert that Plaintiff cannot prove an essential element of her negligence claims.

To prove negligence, a plaintiff must show: "(1) the existence of a duty of care; (2) a breach of that duty; (3) an injury was sustained; and (4) breach of the duty was the proximate cause of the injury."  Lubbers v. Anderson, 539 N.W.2d 398, 401 (Minn. 1995).  When acts

or omissions are within the general knowledge and experience of lay people, expert testimony is not necessary to establish the standard of care. See Hestbeck v. Hennepin County, 212 N.W.2d 361, 364 (Minn. 1973). However, when the standard of care centers around the exercise of professional judgment, it must be proven by expert testimony. See Atwater Creamery Co. v. W. Nat. Mut. Ins. Co., 366 N.W.2d 271, 279 (Minn. 1985) (holding that expert testimony was required to establish the standard of care for an insurance agent's exercise of professional judgment because it would be "speculative" for a jury to decide the issue of negligence without such evidence). Expert testimony may also be necessary to define the standard of care for professionals such as lawyers and doctors. See id.; Smith v. Knowles, 281 N.W.2d 653 (Minn. 1979).

The Court finds that an expert is necessary to define the standard of care for the school administrators' exercise of professional judgment in Plaintiff's case. The definition of this duty falls outside the arena of common knowledge. Specifically, it is beyond the scope of a layperson's knowledge to decide fundamental questions raised by the facts of this case such as whether an investigation was required; what should have been the nature and scope of any such investigation; what were the rights of the accused students, educators, and administrators; were there any applicable privacy limitations; what were the appropriate preventative steps; and what was the appropriate corrective action. Although it is true that jurors have attended school, or may even have children currently attending school, this experience does not necessarily provide them with knowledge on the correct exercise of professional judgment in matters of school administration. Thus, the "special knowledge and

skill" of an expert would greatly assist a jury in arriving at the proper decision in this case. See Carmody v. Aho, 86 N.W.2d 692, 696 (Minn. 1957).

Plaintiff's reliance on Sheehan v. St. Peter's Catholic School, 188 N.W.2d 868, 870 (Minn. 1971), is misplaced. In Sheehan, the Minnesota Supreme Court upheld a jury instruction that described a school's duty to supervise the students' activities. Id. (defining the standard as a duty to "use ordinary care and to protect its students from injury resulting from the conduct of other students under circumstances where such conduct would reasonably have been foreseen and could have been prevented by the use of ordinary care."). First, the opinion does not discuss whether an expert witness was required or even testified as to what constitutes ordinary care. Second, the Sheehan instruction is not at odds with the Court's decision today. The Court does not dispute the accuracy of the instruction, but finds only that Plaintiff must have expert testimony to satisfy the factual prerequisites of the law. Third, the claims in this case are different and far more extensive than a single incident of non-supervision, as was the case in Sheehan. See id. at 869. Here, Plaintiff charges Defendants with failing to investigate harassment and violence, failing to take corrective and preventative action, failing to train and supervise administrators and staff, and retaliating against her, for a period spanning almost six years.

Notably, some of Plaintiff's own authority indicates that an expert is appropriate in defining the duty of care in matters of school administration. See Fallin v. Maplewood-N. St. Paul Dist. No. 622, 362 N.W.2d 318, 323 (Minn. 1985) (plaintiff's expert testified on the propriety of a teacher's supervision in a negligence action); Larson v. Indep. Sch. Dist. No.

314, 289 N.W.2d 112, 117 (Minn. 1979) (same).  Although these cases do not address the issue of whether an expert was required, they serve to illustrate the point that expert testimony is appropriate, and possibly necessary, depending on the facts of a case.

Plaintiff also claims that a jury can determine the standard of care for a school administrator based on the Defendant ISD's policies.  Yet, Plaintiff has sued the very administrators who developed and implemented the policies.  An expert in the area of school administration would greatly aid a jury in understanding the procedure, reasoning, and psychology of developing and implementing such policies; whether administrators followed the policies; and whether the policies were even valid, given the accusations against their drafters.  Indeed, in her Complaint, Plaintiff accuses Defendants of making an "official decision . . . not to remedy the widespread, persistent, and severe violations of civil rights." (Compl. ¶ 23.)

Plaintiff's failure to identify an expert to define the duty of care Defendants owed her in the exercise of their professional judgment as school administrators is fatal to her negligence claims, and Defendants's Motion consequently is granted on this point.[3]

**CONCLUSION**

Plaintiff's recovery for her remaining tort claims against the municipal Defendants and Defendant employees acting in their official capacities is limited to $1 million in

---

[3]Because the Court dismisses Plaintiff's negligence claims on this ground, the Court does not reach the issue of whether the negligence claims are subject to dismissal because they are precluded by the MHRA.

compensatory damages. In addition, Plaintiff is limited to recovering $8,500 in punitive damages from the municipal Defendants, and Plaintiff may not recover punitive damages from the municipal Defendants under Title VI, Title IX, or § 1983. Plaintiff's failure to identify an expert in the area of school administration results in the dismissal of her negligence claims. Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion for Partial Summary Judgment (Docket No. 57) is **GRANTED in part** and **DENIED in part**; and

2. Counts V and VI of the Complaint are **DISMISSED with prejudice**.

Dated: December 12, 2006

                                             s/ Paul A. Magnuson
                                             Paul A. Magnuson
                                             United States District Court Judge